PACIFIC GAS TRANSMISSION
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Pacific Gas and Electric Company et
al., Intervenors.

No. 74–2046.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 15, 1975.

Decided April 9, 1976.

As Amended May 28, 1976.

Rehearing Denied June 2, 1976.

Sanford M. Skaggs, Walnut Creek, Cal.,
with whom Peter W. Hanschen, Los Ange-
les, Cal., was on the brief for petitioner.

Philip R. Telleen, Atty. F. P. C., Wash-
ington, D.C., for respondent; Drexel D.
Journey, Gen. Counsel, F. P. C., Robert W.
Perdue, Deputy Gen. Counsel, Allan Abbot
Tuttle, Sol. and William D. Braun, Atty. F.
P. C., Washington, D.C., were on the brief.

Raymond N. Shibley, Washington, D.C.,
with whom Brian D. O'Neill, Washington,
D.C., was on the brief for intervenor Bank
of America Nat. Trust and Sav. Ass'n.

Malcolm H. Furbush, San Francisco, Cal.,
Daniel E. Gibson, Oakland, Cal., and How-
ard V. Golub, San Francisco, Cal., were on
the brief for intervenor Pacific Gas and
Elec. Co.

K. R. Edsall and E. R. Island, Los Ange-
les, Cal., were on the brief for intervenor
Southern Cal. Gas Co.

Before   BAZELON,   Chief   Judge,
CLARK,* Associate Justice of the Supreme
Court of the United States, and MacKIN-
NON, Circuit Judge.

Opinion for the Court filed by Mr. Justice
CLARK.

Dissenting opinion filed by Chief Judge
BAZELON.

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

394

Mr. Justice CLARK:

The petitioner, Pacific Gas Transmission Company (PGT) is engaged in the transportation of natural gas from production fields in the Province of Alberta, Canada, to communities in Northern and Central California, pursuant to orders and certificates of the Federal Power Commission (Commission). PGT sells its gas to its parent company, the Pacific Gas and Electric Company (P, G and E), in accordance with a tariff approved by the Commission. Prior to the instant decision, that tariff was set on a cost of service basis covering the cost of gas and other operating expenses, depreciation, amortization, taxes, and return on its investment. As a result any fluctuation in its cost of gas was reflected in the monthly billing arrangement between Pacific Gas Transmission and its parent without prior Commission approval.

On May 15, 1973, PGT made an informal filing with the Commission of an amendment to a contract it had made with an affiliated supplier, Alberta Southern Gas Company, Ltd. The amendment provided for a one-cent increase per thousand cubic feet (Mcf) in the price of gas to PGT to provide a fund for the exploration and development of gas reserves in Canada to be committed for sale to PGT. The Commission initially rejected the informal filing but later rescinded that Order and instituted a Section 5 investigation "to determine whether PGT's cost of service tariff should be modified to limit or redefine the costs which may be reflected as purchased gas costs in PGT's rates." 15 U.S.C. § 717d. The Commission had previously expressed some concern about permitting PGT to pass on as purchased gas costs to P, G and E, and in turn to P, G and E's customers, the exploration and development expenses of Canadian producers without proper guarantee that the resulting benefits would accrue to its U.S. customers. This resulted in the entry of the Order in controversy here after a full hearing before an administrative law judge. The Order requires that prior filings be made with the Commission before any increases in PGT's cost of gas purchased from its Canadian supplier and that resulting increases in cost of service charges be subject to suspension and refund under Section 4 of the Natural Gas Act.

(1) *PGT's Objections: The Question Involved* :

Four basic questions are raised about the Order of the Commission: (1) May the Commission "arbitrarily treat PGT differently than other regulated importers by subjecting PGT alone to indirect regulation?" (2) May the Commission amend PGT's existing tariff "without giving PGT notice of its intended amendment and without providing PGT an opportunity to be heard?" (3) May the existing tariff be amended "without substantial evidence to support its finding that the existing tariff is unreasonable?" and (4) May the existing tariff be amended "without an express finding, based upon substantial evidence, that the resulting tariff, as amended, is just and reasonable?" The form of the questions is reminiscent of the query: "When did you stop beating your wife?" As we see it, the substantive question here is a simple one and may be stated in simple terms: "Does the Commission have the power under Section 5(a), and in accordance with the Natural Gas Act, to require that, before increasing its wholesale rate, PGT file an application and seek approval of the increase under the provision of Section 4 of the Act?" We find that it does.

(2) *The Background* :

Since PGT asserts arbitrary action on the part of the Commission without notice as well as without substantial evidence, we believe it necessary to fill in the bare bones direction of the pre-order procedure heretofore given us. PGT provoked the action of May 15, 1973 by directing to the Commission its letter notice of an amendment that had been made to PGT's gas purchasing contract with its affiliate, Alberta and Southern Gas Company Ltd. The Commission then instituted a Section 5(a) proceeding, and on April 30, 1974, a public hearing was held before an Administrative Law Judge. After hearing testimony, receiving

briefs, and hearing oral argument, he issued his initial opinion dated July 1, 1974. Among other things, he found that the Canadian border price of gas to PGT was scheduled to increase from 38 to 70 cents per Mcf on July 1, 1974, and that prior stability in the border price was jeopardized through the planned adoption of a new formula for determining the border price, i. e. by reference to prices for competing alternative energy sources in the markets served by Canadian gas.[1]

The Administrative Law Judge found this situation to be a "change of considerable significance and unquestionable certainty in the ground rules" under which the tariff had originally been approved. See *Pacific Gas Transmission Co.*, 24 FPC 134 (1960). He therefore concluded that the "heretofore reasonable tariff, which operated reasonably in the past, has become unreasonable in that it permits price increases, however massive and however unrelated to cost, to be reflected in the cost of service without prior Commission approval." We find that time has certainly proven his prediction to be true.[2] He concluded that these consequences far outweighed the adverse effect that prior Commission approval might have on PGT and that the Commission must devise procedures that will enable it to promptly decide in advance the increases to be allowed in the price of Canadian gas. The Administrative Law Judge then suggested that PGT's tariff be revised so as to require approval by the Commission of any increases in PGT's cost of gas purchases from its Canadian suppliers, whether imposed or required by Canadian authorities.

The Commission entered such an Order on September 3, 1974; however, on sugges-

tion of an Intervenor, Bank of America, on rehearing, the Order as to PGT's tariff was modified on November 1, 1975 to read as follows:

PGT's tariff be amended by adding, at the end of paragraph 3.1(1) of Rate Schedule PG–1, the following sentence: Provided, that a prior filing must be made with the Federal Power Commission pursuant to Section 4 of the Natural Gas Act before there is reflected in Seller's cost of service charges any increase in its cost of gas purchased from its Canadian supplier either that is imposed or required by Canadian authorities or that reflects a price for purchased gas higher than the price heretofore reflected in the Canadian supplier's price; the increase in Seller's cost of service charges shall be subject to suspension by the Commission pursuant to said Section 4 and, if so suspended, shall thereafter be collected subject to refund as provided in said Section 4.

(3) *The Commission's Power Under Section 5(a)* :

The Commission's order was appropriate. As has been indicated, the initial cost of service tariff of PGT permitted an automatic increase in its rates without prior Commission approval when there was any increase in its cost of gas. The Commission had found that such an automatic method of increase was unjust and unreasonable under the changing conditions above described. Thus it ordered that thereafter tariffs be filed under Section 4 of the Act, 15 U.S.C. § 717c, prior to any higher price being reflected in PGT's tariff to P, G and E for purchased gas. Under the Commission's Section 4 authority, the new higher

1. The Canadian National Energy Board (NEB) has announced that the export price of gas to the United States should not be materially less than the least cost alternative for energy from indigenous sources. The price of gas for export is subject to review by NEB, which is required to report its findings and recommendations to the Governor-in-Council who then may establish a new minimum price which becomes a condition of the export license.

2. On September 30, 1974, an application to increase PGT rates from 70¢ to $1 per Mcf was made, and on May 13, 1975, this was increased to $1.40. On August 1, 1975, the Commission made effective without suspension a $1.40 per Mcf price, and on November 1, 1975, a $1.60 per Mcf price became operative. Altogether these charges make the present rate over four times what it was on June 30, 1974 (38¢ per Mcf).

price could be suspended by the Commission for five months and thereafter could be collected subject to refund.

We find such an Order clearly within the power of the Commission under Section 5(a) of the Natural Gas Act. As this court said in *American Smelting and Refining Company v. FPC*, 161 U.S.App.D.C. 6, 494 F.2d 925, 940–941 (1974), *cert. denied, sub nom. Southern California Gas Company et al. v. FPC*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974), the Commission's authority under Section 5(a) is exercised in:

a two-step adjudicatory process: first, the Commission must find that an existing condition is unjust or discriminatory; second, the Commission must prescribe the remedy for that condition. Each step requires the Commission to draw a legal conclusion, viz.: the illegality of an existing condition and the justness and reasonableness of the remedy.

Here the Commission concluded that the new competitive fuel criterion by the Canadian authorities, the attempt to add the one-cent per Mcf exploration cost to the price of purchased gas (which was later rescinded), and the impending price increase of July 1, 1974 (from 38¢ to 70¢ per Mcf), with others to follow ($1, $1.40 and $1.60 per Mcf) constituted a radical change of circumstances from the situation in 1960 when the tariff was first approved. In light of newly developed situations these changes made the tariff "unreasonable insofar as it deprived the Commission of authority to decide in advance whether PGT should be permitted to reflect certain types of increased costs in its charges." In short, while the Commission did not find a specific rate unjust or unreasonable or discriminatory, it did find, as it was obliged to do under the existing facts, that the existing tariff so directly controlled the going rate for purchased gas as to render it unjust and unreasonable in that it permitted any new rate fixed for purchased gas by the Canadian authorities to be passed on automatically to

P, G and E and thence to the two million customers of P, G and E in California. Such a practice, if permitted to continue, would be an abdication of the Commission's statutory duty, making it a rubber stamp for Canadian authority, and inevitably subjecting gas consumers to unjust and unreasonable rates fixed by the Canadian authority ipse dixit. This result the Commission could not permit because it would continue a practice that would not protect the millions of customers of P, G and E in California from unjust and unreasonable rates.

After such a finding, the Commission had not only the power but the solemn duty to take immediate action. Moreover, if the existing PGT cost of service tariff were continued, the Commission would be obliged on each occasion of an increase order from Canadian authorities to test the fairness and reasonableness of PGT rates only under Section 5 of the Act, a method which empowers prospective rate relief only. Thus the two million California customers would be exposed to unquestionably excessive charges while Section 5 proceedings dragged on and on.[3] The Commission therefore found Section 5 protection inadequate and required that future increases in PGT rates due to increases in the price of Canadian gas be processed through the procedures of the Commission under authority of Section 4 of the Act. Under Section 4, the Commission may suspend an increased rate for up to five months and thereafter require a refund of amounts collected in excess of the rates eventually determined to be just and reasonable.

The parade of horribles that PGT suggests will lead to its destruction as a result of such an Order are hardly tenable. Witness the 100 percent increase that it received under Section 4 procedures on August 1, 1975, less than three months after its application was filed. Thereafter, on November 1, 1975, with the ink hardly dry on the first authorization, it received another one of approximately 15 percent. The

---

3. "* * * the delay incident to determination in § 5 proceedings . . . appears nigh interminable." *Atlantic Refining Company et al.*

*v. Public Service Commission of New York*, 360 U.S. 378, 389, 79 S.Ct. 1246, 1254, 3 L.Ed.2d 1312, 1320 (1959).

Federal Power Commission is not known for its niggardliness. In any event, as the Commission found, it cannot abdicate where the public interest is so deeply involved; both here and now that interest requires the complete bond of protection afforded by Section 4. Should conditions change, it will be soon enough to pursue other remedies.

Nor do we find any merit whatever in PGT's contention that the Commission does not have the power to modify the PGT cost of service tariff. Such absurdities merit no discussion. Likewise the due process claim is unsupportable. PGT, as well as the several intervenors, were afforded a full and complete opportunity to be heard and present evidence before the Administrative Law Judge. Indeed, PGT participated in the hearing and not only presented evidence but was fully heard.

The Order of the Commission is therefore

*Affirmed.*

BAZELON, Chief Judge (dissenting):

There is a certain attractiveness, I must admit, to the FPC's decision in this case; after all, the Commission simply has required petitioner PGT to do what most other gas companies must do before increasing their rates: give the FPC thirty days notice of the proposed increase so that the Commission can perform its statutory mandate to assure that the rates are "just and reasonable." But an appealing decision is not a *reasoned* decision, one which explains the basis for reaching the two necessary legal conclusions to support amendment of a tariff: (1) an existing condition has become "unjust, unreasonable, unduly discriminatory or preferential"; and (2) the remedy is just and reasonable.[1] While the Commission may have developed a reasoned justification for modifying PGT's essentially carte blanche import authority, I find no reasoned explanation for modifying PGT's cost-of-service tariff.

The crucial fact here is that the Commission once found it reasonable for PGT to pass through costs incurred in acquiring Canadian gas without seeking prior FPC approval. Indeed, the Commission freely admits that the tariff has operated reasonably. The Commission argues, however, that now that Canadian prices are no longer stable or fixed on the basis of production costs, the Commission must be able "promptly to decide in advance the measures, if any, to be taken with respect to increases in the price of Canadian gas imposed or compelled by Canadian authorities." Accordingly, the Commission found the pass through provision in PGT's tariff no longer reasonable.

The fatal flaw in this reasoning is that it falsely assumes the tariff somehow disabled the Commission from responding to Canadian imposed price increases. In truth, the only measure the tariff precluded the FPC from taking was that the FPC could not temporarily or permanently prohibit PGT from recovering costs incurred because of the increases. The Commission has failed to explain why imposing a prohibition on cost recovery ever would be an appropriate or even plausible response to Canadian price increases. After all, PGT, not the Canadian government or Canadian producers, would bear the brunt of such a prohibition; the FPC concedes that had PGT been required to absorb even the initial 32 cent price increase for a short period of time it would have been driven out of business, and 2,000,000 consumers would have been deprived of 40% of their gas supply. Yet PGT plainly has no responsibility for or control over price increases mandated by the national Canadian government. PGT cannot even mitigate the impact of those increases by expanding production of non-Canadian gas since PGT's sole operations are in Canada. Thus, the Commission could not possibly question the reasonableness of PGT recovering costs imposed upon it by the Canadian government. This would be true even

1. *American Smelting & Refining Co. v. FPC,* 161 U.S.App.D.C. 6, 494 F.2d 925, 940–41, *cert. denied, sub nom. Southern California Gas Co. v. FPC,* 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974); *see Public Service Comm'n v. FPC,* 167 U.S.App.D.C. 100, 511 F.2d 338, 344–46 (1975).

if those costs were unreasonable—a question the Commission expressly declined to consider. The Commission's actions in promptly approving all the increases PGT has requested since its tariff was modified strongly support this conclusion.

The real measure the Commission wishes to be able to consider with respect to Canadian price increases, as its opinion makes clear, is a halt in further importation of Canadian gas.[2] But that measure can be taken, if at all, only in a proceeding under section 3 of the Natural Gas Act, 15 U.S.C. § 717b, which provides for issuance and amendment of authorizations to import foreign gas. If the Commission desired to assure itself an opportunity to consider halting imports in light of each price increase, it should have proceeded under section 3 to amend PGT's import authorization to require further review and a new authorization for each future price increase before PGT could import gas at the higher price. This is precisely what the Commission did in *Midwestern Gas Transmission Co.*, a decision on which the Commission purported to rely here.[3] Instead, the Commission acted under section 5, 15 U.S.C. § 717d(a), to amend the tariff so as to require review under section 4, 15 U.S.C. § 717c, before PGT can recover costs in-

curred in acquiring gas PGT was authorized—indeed obligated—to acquire. Finding that the Commission has failed to justify this peculiar action,[4] I respectfully dissent.

---

**2.** The Commission's opinion also makes clear that the Commission sought to protect its ability to "send a message" to Ottawa concerning price increases. Putting aside questions as to the propriety of this objective in an adjudicative proceeding, the Commission failed to explain how penalizing PGT by requiring it to absorb Canadian imposed costs would be an effective method of communication. Indeed from this vantage point as well, it seems that an importation review proceeding would be far more effective in achieving the FPC's objective.

**3.** Docket No. G–18314, Order of March 29, 1974. Even this action would have been justified only if the need for Canadian gas was not such that the United States would have to import it regardless of price. The Administrative Law Judge made this same point with regard to the tariff modification he considered, but then upheld the modification without any information as to the need for Canadian gas, leaving that question for "due consideration by the Commission." This action—and the FPC's subsequent action in adopting the ALJ's opinion without even commenting on this crucial

issue—seems to ignore our teaching that in a section 5 proceeding, the burden of proof is on the party advocating a modification, here the Commission staff. *See American Louisiana Pipe Line Co. v. FPC*, 120 U.S.App.D.C. 140, 344 F.2d 525, 529 & n.4 (1965).

**4.** The remedy imposed by the Commission is unreasonable for an independent reason as well: it increases the risks to which PGT is exposed without increasing its rate of return. PGT is thus saddled with a "hybrid" tariff reflecting the worst of both worlds: the risks of suspension and refund associated with a normal tariff yet the low rate of return associated with a cost-of-service tariff. It is no answer to say that this situation can be corrected in a section 4 proceeding; even if that is true—even if PGT can propose more than a pass through of Canadian prices under the Commission's decision—it does not excuse the FPC's failure to provide a reasonable remedy in the instant proceeding. *Cf. Trunkline Gas Co. v. FPC*, 247 F.2d 159 (5th Cir. 1957).